## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

IN RE:                                                      Chapter 7

ELIZABETH K. RICHERT,                                       Case No. 22-16713-RAM

     Debtor.

_____/

KATHLEEN WHITE MURPHY and
THOMAS M. WHITE, as co-administrators                       Adv. No.
of the Estate of Anna M. White,

     Plaintiffs,

v.

ELIZABETH K. RICHERT,

     Defendant.

_____/

### COMPLAINT OBJECTING TO DISCHARGEABILITY
### OF DEBT, OBJECTING TO DEBTOR'S DISCHARGE,
### AND FOR DECLARATORY RELIEF

KATHLEEN WHITE MURPHY and THOMAS M. WHITE, as the co-administrators of

the Estate of Anna M. White (collectively, the "Plaintiffs"), hereby sue ELIZABETH K.

RICHERT ("Defendant" or "Debtor"), and state as follows:

### JURISDICTION AND VENUE

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a),

157(b)(1), (b)(2)(A), (b)(2)(I), and (b)(2)(J), and 28 U.S.C. §§1334(a) and (b).

2.    Venue is proper pursuant to 28 U.S.C. § 1409(a) since this adversary proceeding

arises under, and arises in or is related to, the Defendant's Chapter 7 case pending before the Court.

3.      This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (b)(2)(J), in which the Court is authorized and empowered to hear, determine, and enter final orders and judgments.

4.      The statutory predicates in support of the relief requested are sections 11 U.S.C. §§ 105, 523(a)(4)(A), 523(a)(6), 727(a)(3), 727(a)(4)(A), 727(a)(6)(A), and 727(a)(6)(C), Rules 7001(2), 7001(4), 7001(6) and 7001(9) of the Federal Rules of Bankruptcy Procedure, and 28 U.S.C. § 2201(a).

## THE PARTIES

5.      The Plaintiffs are the co-administrators of the Estate of Anna M. White and are holders of an allowed claim against the estate in the amount of $341,998.65.[1]

6.      The Defendant is the Debtor in the above-styled Chapter 7 bankruptcy proceeding.

## BACKGROUND

7.      Robert L. Richert ("Mr. Richert") established the "Robert L. Richert Revocable Trust" (the "Robert Trust") and served as trustee until his death. Upon Mr. Richert's death, the Defendant, who is a licensed attorney, became successor trustee under the Robert Trust.

8.      Anna M. White was the sister of Mr. Richert and a beneficiary of the Robert Trust. The Plaintiffs are the adult children of Anna M. White, who were appointed co-administrators of the Estate of Anna M. White, following her death in 2019.

9.      At the time of Mr. Richert's death, the Robert Trust held title to (a) real property located at 7724 E. Long Rifle Road, Carefree, Arizona (the "Arizona Property"), and (b) $611,814.45 in account with Fidelity Investments (the "Fidelity Account").

---

[1] *See* Claim No. 5 and ECF No. 242.

*A.*      *The Litigation*

10.      In July 2015, Anna M. White, then 91 years of age, commenced litigation (the "Litigation") against the Defendant in the Circuit Court of Lake County, Illinois, seeking (a) production of a deed to certain real property located at 49 Willow Parkway, Buffalo Grove, Illinois (the "Illinois Property"), and (b) an accounting of the Robert Trust.

11.      The claim for an accounting was based, in part, on the Defendant having failed to account for monies she had transferred from the Fidelity Account while serving as trustee of the Robert Trust.

12.      The Defendant subsequently removed the Litigation to the United States District Court for the Northern District of Illinois (the "District Court") based on diversity of citizenship.

*B.*      *The Missing Funds*

13.      During the Litigation, it was discovered the Defendant had issued six (6) checks, drawn on the Fidelity Account and made payable to "cash" in the aggregate amount of $467,541.82 (the "Missing Funds"). During the trial held in the Litigation, the Defendant testified she could not remember how the Missing Funds had been spent or why she had made the checks payable to "cash" as opposed to a specific payee.

*C.*      *The Trust Agreements*

14.      During discovery conducted in the Litigation, three (3) versions of the trust agreement for the Robert Trust were obtained or produced by the parties.[2] Versions A and B of the trust agreement were obtained from Fidelity Investments, while Version C of the trust agreement

---

[2] The three (3) versions of the trust agreement are hereinafter referred to as "Version A," "Version B," and "Version C." The District Court found that Version A was provided to Fidelity Investments to open the trust account, Version B was the version provided by the Defendant to Fidelity Investments in order to be recognized as successor trustee, and Version C was a counterfeit created by the Defendant.

was produced by the Defendant approximately 2 years after the Litigation had commenced, prior to which time the Defendant claimed she no longer had copies of any Robert Trust agreements.

15.    Versions A, B, and C each provided the following: (a) Anna M. White would be entitled to forty-seven percent (47%) of the Robert Trust *res*; (b) six percent (6%) of the Robert Trust *res* would go to named charities; and (c) the Arizona Property would be conveyed to the Defendant, provided that the Arizona Property was a part of the Robert Trust upon the death of Mr. Richert.

16.    Version A and Version B did not provide how the remaining Robert Trust *res* would be distributed; however, Version C (again, produced by the Defendant) purported to transfer the additional forty-seven percent (47%) of the Robert Trust *res* to the Defendant, which would have otherwise been distributed to the siblings of Mr. Richert, including Anna M. White.

17.    Believing that Version C was a forgery, and based further on the Missing Funds, Anna M. White subsequently amended her original petition to add a claim for breach of fiduciary duty against the Defendant.

**D.    *Death of Anna M. White***

18.    Anna M. White died prior to the trial in the Litigation, and the Plaintiffs were then appointed and authorized to prosecute the claims asserted in the Litigation, thence styled, *Kathleen White Murphy, as Co-Administrator of the Estate of Anna M. White and Thomas White, as Co-Administrator of the Estate of Anna M. White v. Elizabeth K. Richert,* Case No. 15-cv-08185.

**E.    *The Trial and Opinion***

19.    The District Court conducted a bench trial over a period of nine days in September, October, and November 2020. Thereafter, on May 27, 2021, the District Court issued an 86-page *Memorandum Opinion and Order* (the "Opinion"), a true and correct copy of which is attached

hereto as _Exhibit "A,"_ as well as the _Judgment in a Civil Case_ (the "Judgment"), a true and correct

copy of which is attached hereto as _Exhibit "B."_

20.    In the Opinion, the District Court found and concluded, by a preponderance of the

evidence, that: (a) "[D]efendant was the trustee of the Robert Trust," (b) "Anna M. White was a

beneficiary of the Robert Trust," (c) "[a] fiduciary duty therefore existed between defendant and

Anna White as a matter of law," (d) "defendant breached her fiduciary duty to Anna White by

failing to administered the authentic version of the Robert Trust according to its terms and failing

to distribute to Anna White her share of the trust assets[,]" and (e) "Version C of the Robert Trust

is a counterfeit that defendant created in order to take control of forty-seven percent of the trust

estate to which she was not entitled." _See Opinion_, pp. 42-3.

21.    The District Court also concluded as follows:

> [D]efendant **breached her fiduciary duty** to Anna White [White] by (a) creating a
> counterfeit version of the Trust that purported to distribute to defendant an
> additional forty-seven percent of the trust assets to which she was not entitled, and
> (b) failing to distribute to Anna White, in accordance with the genuine version of
> the Robert Trust, her share of the forty-seven percent of the trust assets that
> defendant attempted to control via **the counterfeit trust document**.

_Opinion_, p.2 (emphasis added).

> It is undisputed that defendant made out six of the checks – totaling $467,541.82 –
> to cash. Despite disposing of nearly a half-million dollars (and slightly more than
> seventy-five percent of the trust's cash assets) in this fashion, defendant testified
> that she could not remember how the $467,541.82 had been spent. Nor did
> defendant testify why she had made these checks out to cash, as opposed to a
> specific payee.

_Id._ at 8.

> [T]he plaintiffs [Administrators] proved by clear and convincing evidence that
> defendant's [Defendant's] breach of fiduciary duty was **reprehensible and
> conducted with an evil mind**, such that an award of punitive damages on a 1:1 ratio
> with plaintiffs' compensatory damages is warranted under Arizona law, which
> governs plaintiffs' entitlement to punitive damages.

*Id.* (emphasis added).

22.    In awarding punitive damages to the Plaintiffs, the District Court held that the Defendant "owed Anna White a duty of loyalty and was obligated in her dealings with Anna to act with the utmost degree of fidelity and good faith." *Id.* at 63. The District Court also found and concluded that "Defendant actively, purposefully violated those standards by creating a fake version of the Robert Trust in order to steal forty-seven percent of the trust estate to which she was not entitled[.]" *Id.*

23.    Finally, in concluding that the Defendant had acted with an "evil mind," the District Court held that the "evidence clearly and convincingly proved that defendant acted with an evil mind. Defendant's intent to 'injure or defraud' Anna and 'deliberately interfere[d]' with her rights under the Robert Trust practically leaps off the pages of the trial record." *Id.* at 64 (citation omitted).

24.    Consequently, the District Court awarded the amount of $246,152.76 to the Plaintiffs, which included compensatory and punitive damages, and also granted the Plaintiffs leave to file a petition for attorneys' fees.

**F.    *The Fee Order***

25.    On September 6, 2022, the District Court entered its *Memorandum Opinion and Order* (Doc. #512) (the "Fee Order") and concluded that the Plaintiffs were entitled to an award of attorneys' fees for specified periods during the Litigation, and at the hourly rates approved by the District Court.

26.    In accordance with the Fee Order, the Plaintiffs were directed to file revised fee statements and supporting materials no later than September 20, 2022.

27.     On September 20, 2022, counsel for the Plaintiffs filed declarations and revised fee statements consistent with the Fee Order.

28.     Thereafter, on December 29, 2022, the District Court issued a minute entry on the docket, in the Litigation, awarding attorneys' fees and costs to the Plaintiffs in the amount of $95,845.89 (the "Awarded Fees").

**G.     *The Appeal and Enforcement***

29.     On November 24, 2021, the Defendant filed a notice of appeal of the Opinion and Judgment to the United States Court of Appeals for the Seventh Circuit (the "Court of Appeals"), which was assigned Case No. 21-3203 (the "Appeal"). The Defendant did not appeal (or amend her notice of appeal) to provide for a review of the Fee Order or the Awarded Fees.

30.     On February 24, 2023, the Court of Appeals issued its *Order* (Doc. # 49) and *Final Judgment* (Doc. # 50) affirming the Opinion and Judgment of the District Court.  True and correct copies of the February 24, 2023 Order and Final Judgment are attached hereto as *Exhibit* *"C"* and *Exhibit* *"D,"* respectively.

31.     On March 22, 2023, the Court of Appeals issued its *Order* (Doc. #57) denying the Defendant's petition for rehearing and rehearing *en banc* of the *Order* and *Final Judgment* affirming the *Opinion* and *Judgment* issued by the District Court. A true and correct copy of the March 22, 2023 Order is attached hereto as *Exhibit* *"E."*

## THE BANKRUPTCY PROCEEDINGS

32.     On August 30, 2022 (the "Petition Date"), the Defendant filed a voluntary petition under Chapter 13 of Title 11 of the United States Code (the "Case").

**A.     The Motions to Convert**

33.     On October 15, 2022, the Defendant filed her *Motion to Convert to Chapter 11* [ECF No. 12], in which the Defendant sought to convert the Case from Chapter 13 to Chapter 11, and, on October 21, 2022, the Court entered the *Order Converting Case Under Chapter 13 to Chapter 11* [ECF No. 31]; however, on November 3, 2022, the Defendant filed her *Motion to Vacate Order Converting Case Under Chapter 13 to Case Under Chapter 11* [ECF No. 49].

34.     On November 8, 2022, the Plaintiffs filed their *Motion to Convert Chapter 11 Case to Chapter 7* [ECF No. 56] (the "<u>Conversion Motion</u>").

**B.     The Scheduling Order**

35.     Following hearings before the Court on December 16, 2022, the Court issued the *Order Granting Motion to Vacate, Reconverting Case to Chapter 13, Setting Filing Deadlines, and Setting Further Preliminary Hearing on Motion to Convert* [ECF No. 119] (the "<u>Scheduling Order</u>").

36.     In accordance with the Scheduling Order, the Defendant was obligated to: (a) file any response to the Conversion Motion no later than January 6, 2023, which was to include a description of the Defendant's interest in property located at 6265 SW 88th Court, Miami, Florida (the "<u>Miami Property</u>") and the Arizona Property; (b) attach copies of any trust documents for any trust owning the Miami Property and/or Arizona Property and under which the Defendant is either a trustee or beneficiary; and (c) appear for a 2004 Examination to be conducted by the Plaintiffs. Additionally, the Court denied the Defendant's requests to file any such trust documents under seal and to provide copies only to the Chapter 13 trustee.

37.     On January 6, 2023, the Defendant filed her *Response to Motion to Convert to Chapter 7* [ECF No. 149] (the "<u>January 6 Response</u>") and attached a "Warranty Deed" relating to

the Arizona Property, which purports to convey the Defendant's title to the Arizona Property to the "Elizabeth K. Richert Revocable Trust." The deed in question was executed by the Defendant on May 25, 2012; however, the Defendant's signature was notarized on November 3, 2011. Therefore, the Defendant's signature was notarized more than six (6) months *before* the Defendant executed the deed in question.

38.     On January 8, 2023, the Defendant filed her *Response to Motion to Convert to Chapter 7* [ECF No. 150] (the "January 8 Response") and attached the following: (a) the same deed attached to the January 6 Response; (b) a "Land Trust Agreement," that appeared to have been dated June 21, 2000, and which appeared (i) to be related to the Miami Property, and (ii) to disclose the Defendant as beneficiary; and (c) an "Amended and Restated Elizabeth K. Richert Trust Agreement" that did not include a date, other than to disclose "2021" and also did not disclose any other material information other than the Defendant as "Grantor/Trustee." Both of the attached trust agreements were heavily redacted even though the Defendant had not previously requested authorization to file redacted documents with the Court.

*C.     The 2004 Examination*

39.     On January 17 and 19, 2023, the Plaintiffs conducted a 2004 Examination of the Defendant (the "2004 Examination"). In connection with the 2004 Examination, the Plaintiffs requested that the Defendant produce documents, including, without limitation, statements for any financial account in which the Defendant held an ownership or beneficial interest, as well as any trust agreements, including, without limitation, any amendments thereto, relating to any trust in connection with the Defendant was a settlor or beneficiary.

40.    On January 16, 2023, at 11:23 p.m., the Defendant provided a share file link purporting to grant access to documents that were to have been produced no later than January 16, 2023, at 4:00 p.m., in connection with the 2004 Examination scheduled for the following morning.

41.    The extent of the Defendant's production included the following: (a) a deed to the Miami Property; (b) an appraisal for the Arizona Property; (c) a single, redacted page that appeared to part of an insurance policy for the Arizona Property; (d) a partially redacted vehicle registration; (e) a partially redacted trust agreement for a "Land Trust," which allegedly holds title to the Miami Property and appears to be contradicted by deeds that the Plaintiffs obtained from the public records for Miami-Dade County, Florida; and (g) three (3) post-petition bank statements for each of the Defendant's financial accounts with TD Bank and Navy Federal Credit Union (collectively, the "Bank Statements"). The Defendant has never provided the Plaintiffs with any pre-petition statements for any of the Defendant's financial accounts since filing the Case.

42.    The Bank Statements did not support the Defendant's disclosure of income on Schedule I of the various versions of the Defendant's schedules filed with the Court. In fact, the aggregate amount of *all* deposits, as reflected in the Bank Statements, for the three (3) month period for the accounts with TD Bank *and* Navy Federal Credit Union, was less than the *monthly* income disclosed in Schedule I of the Defendant's schedules filed with the Court.

43.    The Defendant also failed to produce any bank statements, whatsoever, for the account at "Patelco" (the "Patelco Account"), which was disclosed, for the first time, in the Defendant's amended schedules filed with the Court on February 21, 2023, nearly six (6) months after the Petition Date (s*ee ECF No. 238*) and more than one month following the Defendant's 2004 Examination. In the amended schedules filed on February 21, 2023, the Defendant disclosed the Patelco Account as having a balance in the amount of $244,956.72.

44.     Additionally, during the 2004 Examination, the Defendant refused to answer questions on not fewer than thirty-one (31) occasions over a period of approximately five (5) hours. Some of the more glaring examples included the following: (a) the Defendant refusing to answer whether she reviewed her schedules before filing with the Court, and (b) refusing to identify the trustee under the "Elizabeth K. Richert Revocable Trust."

**D.      The Motion to Compel**

45.     On January 24, 2023, the Plaintiffs filed their *Motion to Compel Testimony and Production of Documents* (ECF No. 165) (the "<u>Motion to Compel</u>"), which was supported by the following exhibits: (a) the transcripts from the 2004 Examination; (b) a schedule of Documents Requested and Provided; and (c) Transcript Designations identifying those questions that the Defendant refused to answer.

46.     On February 2, 2023, the Court entered its *Order Granting Motion to Compel Testimony and Production of Documents* [ECF No. 194] (the "<u>Compulsion Order</u>"), thus granting the Motion to Compel. To date, the Defendant has not produced any additional documents in accordance with the Compulsion Order, including, without limitation, not a single financial statement for the Patelco Account.

**E.      Conversion to Chapter 7**

47.     On January 30, 2023, the Court conducted a hearing on the Conversion Motion and converted the Defendant's case to Chapter 7, and, on February 1, 2023, the Court entered the *Order Granting Motion to Convert Case to Chapter 7* [ECF No. 188].

48.     The Court subsequently denied the Defendant's requests for reconsideration of the Conversion Order and to reconvert the case to Chapter 13.  *See ECF Nos. 222 and 239.*

## CLAIM NO. 5

49.     On October 15, 2022, the Plaintiffs filed a proof of claim in the amount of $341,998.65, which was designated Claim No. 5 by the Clerk of the Court ("Claim 5").

50.     On January 26, 2023, the Defendant filed her *Amended Objection to Claim* [ECF No. 171] (the "Claim 5 Objection"), and, on February 3, 2023, the Plaintiffs filed their *Response to Amended Objection to Claim* [ECF No. 203] (the "Claim 5 Response").

51.     On February 23, 2022, the Court conducted a hearing on the Claim 5 Objection and Claim 5 Response. Thereafter, on February 27, 2023, the Court entered the *Order Overruling, Without Prejudice, Debtor's Amended Objection to Claim* [ECF No. 242] (the "Claim 5 Order").

52.     In accordance with the Claim 5 Order, the Court overruled, without prejudice, the Claim 5 Objection, and ordered, in part, that Claim 5 is allowed in its entirety without prejudice, however, to the Defendant's right to refile an objection "in the event the Court of Appeals reverses the Judgment or remands for further proceedings." *See Claim 5 Order*, p.2, ¶1.

53.     The Court of Appeals has since affirmed the Judgment and denied the Defendant's requests for rehearing and *en banc* rehearing. *See* attached Exhibits "C," "D," and "E."

54.     Therefore, Claim 5 is an allowed claim against the Defendant.

## THE ILLINOIS PROPERTY

55.     Throughout the Case, the Defendant has falsely represented that she either directly or beneficially owns the Illinois Property.

*A.     Bankruptcy Pleadings/Papers*

56.     For example, the Defendant made the following misrepresentations in schedules filed under penalty of perjury with the Court:

| Date | Docket Entry Number | Notable Asset Disclosures |
|---|---|---|
| October 24, 2022 | ECF No. 35 | (a) TD Bank - $12.00<br>  Navy Federal - $542.46<br><br>**(b) *49 Willow Parkway Buffalo Grove, IL***<br><br>(c) "Elizabeth Richert Trust" (Unknown Value)<br><br>(d) "Land Trust 2000" (Unknown Value) |
| January 6, 2023 | ECF No. 145 | (a) TD Bank - $797.56<br>(b) Navy Federal - $0.00<br>(c) TD Bank IOTA - $25.00<br><br>(d) "Elizabeth Richert Revocable Trust"<br>   Carefree Arizona<br>   $533,191 - $733,000<br><br>   ***49 Willow Parkway Buffalo Grove, IL $261,560***<br><br>(e) "2000-01 Land Trust"<br>   Unit 9d<br>   Miami, FL<br>   $366,395.00 |
| February 21, 2023 | ECF No. 238 | (a) TD Bank - $797<br>(b) Navy Federal - $0.00<br>(c) TD Bank IOTA - $25.00<br>(d) Patelco - $244,956.72<br><br>(e) "Elizabeth Richert Revocable Trust"<br>   Carefree Arizona<br>   $533,191 - $733,000<br><br>   ***49 Willow Parkway Buffalo Grove, IL $261,560***<br><br>(f) "2000-01 Land Trust"<br>   Unit 9d<br>   Miami, FL<br>   $366,395.00 |

57.     Accordingly, in the Defendant's schedules filed on October 24, 2022, the Defendant disclosed that she owned the Illinois Property, individually. *See ECF No. 35.* However, in the Defendant's schedules filed on January 6, 2023, and February 21, 2023, the Defendant disclosed the Illinois Property as being owned by the "Elizabeth K. Richert Revocable Trust."

58.     Additionally, in the Defendant's *Motion for Reconversion to Chapter 13* [ECF No. 233], the Defendant, again, maintained that the District Court awarded her title to the Illinois Property. *See ECF No. 233*, at p.1, ¶3 ("The Debtor's ownership of the 49 Willow Parkway, Buffalo Grove, Illinois property ('Illinois Property') is being offered by Debtor for liquidation and payment of all allowable claims.").

59.     Likewise, in the Defendant's *Amended Motion for Order to Dissolve Lis Pendens on Debtor Property Located at 49 Willow Parkway, Buffalo Grove, IL, and for Sale of Property and for Expedited Hearing* [ECF No. 140] ("Amended Motion to Dissolve"), the Defendant stated, in part, "[r]elying on the Court's [District Court's] 10/24/2021 Memorandum Opinion and Order, Defendant by Quit Claim Deed, corrected title to the Buffalo Grove property, erroneously titled in her name as trustee of the Robert L. Richert Revocable Trust, to the Elizabeth K. Richert Revocable Trust, and recorded same on November 2, 2021." *See Amended Motion to Dissolve*, p.2, ¶5.

60.     Finally, in the Defendant's plan of reorganization filed on January 6, 2023, the Defendant proposed selling the Illinois Property to fund distributions to creditors. *See ECF No. 147* ("Debtor is seeking permission from the court to sell the property held in the Elizabeth K. Richert Revocable Trust . . . located at 49 Willow Parkway, Buffalo Grove, IL . . . and will be attributing all monies received, with the exception of associated sale and closing fees, to her

Chapter 13 Plan base.").  Thus, the Debtor went so far as to file a plan of reorganization predicated on the sale of the Illinois Property.

**B.      *District Court Rulings***

61.      Notwithstanding the Defendant having represented, on multiple occasions, that she holds either direct or beneficial title to the Illinois Property, the District Court had already rejected the Defendant's claims prior to the commencement of the Case.

62.      Indeed, in the Opinion, the District Court found and concluded that the Illinois Property was titled in the name of the Defendant, *not individually,* but as trustee of the Robert Trust. *See Opinion*, p.19 ("It is undisputed . . . that title to the Buffalo Grove [Illinois Property] remains in defendant's name as trustee of the Robert Trust.").

63.      Moreover, in its *Memorandum Opinion and Order*, dated October 26, 2021 (the "October 2021 Order"), the District Court held, in part, "there is no dispute that title to the Buffalo Grove home remains in defendant's name in her capacity as trustee of the Robert Trust." *See October 2021 Order*, p.19. A true and correct copy of the October 2021 Order is attached hereto as *Exhibit "F."*

64.      Finally, on April 21, 2022, the District Court entered an *Order* denying the Defendant's request for contempt, injunctive and other relief (the "April 22 Order"). In the April 22 Order, the District Court concluded, in part, "[a]s for the merits, the [Defendant's] motion has none. First, the key predicate of defendant's motion – that the Court awarded defendant title to the Buffalo Grove [Illinois Property] home – is false." *See April 22 Order*, at p.2.  The District Court went on to hold that "[b]ecause the Court has never ruled that title to the Buffalo Grove home belongs to the defendant in her individual capacity, there is no basis in the Court's judgment to

enjoin plaintiffs or their attorneys from attempting to exercise control over the property." *See id.*
at 3.

## C.    *The Illinois Property Transaction*

65.    Additionally, on November 8, 2010, a "Loan Agreement" (the "Loan Agreement")
was entered whereby the Defendant, *as trustee of the Robert Trust*, agreed to loan $200,000.00 in
connection with the acquisition of the Illinois Property. The Loan Agreement provided that the
funds would be loaned and repaid upon the sale of Anna M. White's residence.

66.    On November 10, 2010, a closing statement (the "Closing Statement") was
executed by the Defendant, which provided that the Illinois Property would be acquired by the
Robert Trust. Also, on November 10, 2010, a warranty deed was executed, and subsequently
recorded in Lake County, Illinois, conveying title to the Illinois Property to the Defendant, as
trustee of the Robert Trust (the "Warranty Deed").

## D.    *Attempted Transfer*

67.    On June 25, 2020, the Defendant, as trustee of the Robert Trust, executed a
quitclaim deed in an attempt to transfer title to the Illinois Property to "Geoffrey W. Colmes,
Trustee of the trust dated April 17, 2020" (the "Quitclaim Deed"). Although the Quitclaim Deed
was executed by the Defendant on June 25, 2020, the Quitclaim Deed was not recorded until
November 2, 2021.

68.    In her *Amended Motion for Order to Dissolve Lis Pendens on Debtor Property
Located at 49 Willow Parkway, Buffalo Grove, IL, and for Sale of Property and for Expedited
Hearing* [ECF No. 140], the Defendant asserted, in part, "[r]elying on the [District] Court's
10/26/2021 *Memorandum Opinion and Order*, Debtor by Quit Claim Deed, corrected title to the
Buffalo Grove property, erroneously titled in her name as trustee of the Robert L. Richert

Revocable Trust, to the Elizabeth K. Richert Revocable Trust, and recorded same on November 2, 2021." *See ECF No. 140*, p.2, ¶5.

69.     Contrary to the Defendant's representation, and aside from the fact that the Defendant had no legal right to transfer title to the Illinois Property, the Defendant executed the purported deed to "Geoffrey W. Colmes, Trustee of the trust dated April 17, 2020."

## COUNT I

### *Objection to Dischargeability of Debt*
### *Pursuant to 11 U.S.C. § 523(a)(4)*

70.     The Plaintiffs hereby reallege and incorporate the allegations contained in Paragraphs 1 through 69 as though set forth fully herein.

71.     The Defendant was the Trustee of the Robert Trust.

72.     Anna M. White was a beneficiary of the Robert Trust.

73.     The Defendant owed a fiduciary duty to beneficiaries of the Robert Trust, including Anna M. White.

74.     The Defendant and beneficiaries of the Robert Trust, including Anna M. White, were in a fiduciary relationship.

75.     The Defendant breached her fiduciary duty owed to beneficiaries of the Robert Trust, including Anna M. White, by (a) forging a trust agreement in an effort to gain a larger share of the assets of the Robert Trust to which the Defendant was not otherwise entitled, and (b) by writing checks in the amount of the Missing Funds, for which the Defendant could not remember the purpose for such checks.

76.     The Defendant committed fraud or defalcation while in a fiduciary capacity.

77.     As a result of the Defendant's breach of fiduciary duty owed to Anna M. White, the District Court issued the Judgment in favor of the Plaintiffs, which, together with the fees subsequently awarded, is the basis and support for Claim 5.

**WHEREFORE,** the Plaintiffs respectfully request that the Court find in their favor on Count I of this Complaint and enter a judgment holding that Claim 5 is a non-dischargeable claim pursuant to 11 U.S.C. § 523(a)(4), as well as granting any other and further relief that the Court may deem just and proper.

## COUNT II

### *Objection to Dischargeability of Debt*
### *Pursuant to 11 U.S.C. § 523(a)(6)*

78.     The Plaintiffs hereby reallege and incorporate the allegations contained in Paragraphs 1 through 69 as though set forth fully herein.

79.     The Defendant was the Trustee of the Robert Trust.

80.     Anna M. White was a beneficiary of the Robert Trust.

81.     The Defendant owed a fiduciary duty to beneficiaries of the Robert Trust, including Anna M. White.

82.     The Defendant and beneficiaries of the Robert Trust, including Anna M. White, were in a fiduciary relationship.

83.     The Defendant breached her fiduciary duty owed to beneficiaries of the Robert Trust, including Anna M. White, by (a) forging a trust agreement in an effort to gain a larger share of the assets of the Robert Trust to which the Defendant was not otherwise entitled, and (b) by writing checks in the amount of the Missing Funds, for which the Defendant could not remember the purpose for such checks.

84.    The Defendant issued checks payable to "cash" resulting in the Missing Funds and, therefore, caused willful and malicious injury to beneficiaries of the Robert Trust, including Anna M. White.

85.    By issuing checks for the Missing Funds, the Defendant committed an intentional act the purpose of which was to cause injury, or which was substantially certain to cause injury.

86.    Version C, which was forged by the Defendant and determined by the District Court to be a counterfeit, was the only basis upon which the Defendant would be entitled to any portion of the remaining forty-seven percent (47%) of the Robert Trust *res*, other than the Arizona Property and any portion of any other Robert Trust *res* to which she might otherwise be entitled under state intestacy laws. Therefore, the Defendant, in forging Version C and issuing checks for the Missing Funds, knew such acts were substantially certain to cause injury to beneficiaries of the Robert Trust, including Anna M. White.

**WHEREFORE,** the Plaintiffs respectfully request that the Court find in their favor on Count II of this Complaint and enter a judgment holding that Claim 5 is a non-dischargeable claim pursuant to 11 U.S.C. § 523(a)(6), as well as granting any other and further relief that the Court may deem just and proper.

### COUNT III

***Objection to Defendant's Discharge***
***Pursuant to 11 U.S.C. § 727(a)(3)***

87.    The Plaintiffs hereby reallege and incorporate the allegations contained in Paragraphs 1 through 69 as though set forth fully herein.

88.    In connection with the 2004 Examination, the Defendant failed to produce documents, including, without limitation, pre-petition statements for the Defendant's accounts with TD Bank and Navy Federal Credit Union. Moreover, the Defendant has never produced any

financial statements for the Patelco Account, in accordance with the requests for production of documents in connection with the 2004 Examination.

89.     As a result of the Defendant's inability or refusal to produce the requested documents, the Defendant has concealed, destroyed, and/or failed to keep or preserve any recorded information, including books, documents, records, and papers, from the Defendant's financial condition or business transactions might be ascertained.

**WHEREFORE,** the Plaintiffs respectfully request that the Court find in their favor on Count III of this Complaint and enter a judgment denying the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3), as well as granting any other and further relief that the Court may deem just and proper.

## <u>COUNT IV</u>

### *Objection to Defendant's Discharge*
### *Pursuant to U.S.C. § 727(a)(4)(A)*

90.     The Plaintiffs hereby reallege and incorporate the allegations contained in Paragraphs 1 through 69 as though set forth fully herein.

91.     The Defendant omitted assets on her schedules and committed a false oath in the Case.

92.     Specifically, the Defendant did not disclose the Arizona Property or the Miami Property on her original schedules filed with the Court on October 24, 2022.  *See* ECF No. 35.

93.     The Defendant also failed to disclose the Patelco Account on her original and amended schedules filed with the Court on October 25, 2022, and January 6, 2023. *See* ECF Nos. 35 and 145. Indeed, the Defendant did not disclose the Patelco Account in her schedules until she filed the amended schedules on February 21, 2023, which was approximately six (6) months after

the Petition Date, and more than a month following the 2004 Examination conducted on January

17 and 19, 2023. *See* ECF No. 238.

94.    The Defendant's failure to disclose the Patelco Account was an intentional

omission in an effort to conceal the Patelco Account from creditors. Likewise, the Defendant's

failure to disclose Miami Property was an intentional omission in an effort to conceal the Miami

Property from creditors. The Defendant went so far as to conceal the identity of her personal

residence until she filed an amended voluntary petition on January 6, 2023. *See* ECF No. 144.

95.    Additionally, the Defendant has repeatedly and consistently represented, by either

listing or referencing the Illinois Property in her schedules and in other pleadings filed with the

Court, as being owed either individually, or by a trust under which the Defendant is a beneficiary.

96.    As a result of the Litigation, the Defendant knew the Illinois Property was not titled

in her name, individually, but only as trustee of the Robert Trust.

**WHEREFORE,** the Plaintiffs respectfully request that the Court find in their favor on

Count IV of this Complaint and enter a judgment denying the Defendant's discharge pursuant to

11 U.S.C. § 724(a)(4)(A), as well as granting any other and further relief that the Court may deem

just and proper.

### COUNT V

***Objection to Defendant's Discharge***
***Pursuant to 11 U.S.C. § 727(a)(6)(A)***

97.    The Plaintiffs hereby reallege and incorporate the allegations contained in

Paragraphs 1 through 69 as though set forth fully herein.

98.    The Defendant has refused to obey lawful orders issued by the Court in the Case.

99.    The Defendant has refused to obey and otherwise comply with the Compulsion

Order by failing to produce documents in accordance with the Compulsion Order, including, at a

minimum, any financial statements for the Patelco Account. The Defendant has also failed to produce any pre-petition account statements for her accounts with TD Bank and Navy Federal.

100.    The Defendant has also refused to obey and otherwise comply with the Compulsion Order by failing to produce clean, unredacted copies of trust agreements, including, without limitation, any amendments thereto.

101.    Finally, the Defendant failed to comply with the Scheduling Order by failing to file unredacted versions of trust agreements under which the Defendant is allegedly a beneficiary. The versions of the trust agreements attached to the January 8 Response were heavily redacted, even though the Court denied the Defendant's requests to file the trust agreements under seal and to provide the trust agreements only to the Chapter 13 trustee. Moreover, the Defendant failed to obtain prior authorization to file redacted versions of the agreements.

**WHEREFORE,** the Plaintiffs respectfully request that the Court find in their favor on Count V of this Complaint and deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(6)(A), as well as granting any other and further relief that the Court may deem just and proper.

### <u>COUNT VI</u>

### *Objection to Defendant's Discharge*
### *Pursuant to 11 U.S.C. § 727(a)(6)(C)*

102.    The Plaintiffs hereby reallege and incorporate the allegations contained in Paragraphs 1 through 69 as though set forth fully herein.

103.    During the course of her 2004 Examination, the Defendant refused to answer questions on not fewer than thirty-one (31) occasions. These questions were material and related to the Defendant's assets and/or financial affairs or dealings.

**WHEREFORE,** the Plaintiffs respectfully request that the Court find in their favor on Count VI of this Complaint and enter a judgment denying the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(6)(C), as well as granting any other and further relief that the Court may deem just and proper.

## COUNT VII

### *Declaratory Relief*

104.    The Plaintiffs hereby reallege and incorporate the allegations contained in Paragraphs 1 through 69 as though set forth fully herein.

105.    The Illinois Property should be declared property of the Robert Trust.

106.    The Illinois Property was, upon information and belief, acquired with funds from the Robert Trust.  At a minimum, title to the Illinois Property was recorded in the name of the Defendant, as trustee of the Robert Trust.

107.    According to the Loan Agreement, funds from the Robert Trust were used to acquire the Illinois Property.

108.    The Closing Statement also provided that the Illinois Property is being acquired by the Defendant, as trustee of the Robert Trust.

109.    On or about November 2, 2021, the Defendant attempted to transfer title to the Illinois Property to "Geoffrey W. Colmes, as Trustee." Upon information and belief, no consideration was given in exchange for the alleged transfer of the Illinois Property.

110.    At present, there is a bona fide dispute and actual controversy between the Plaintiffs and the Defendant as to whether the Illinois Property is property of the Defendant, a trust controlled by the Defendant, or the Robert Trust.

111.    There is an immediate and justiciable question as to whether the Illinois Property is property of the Defendant, a trust controlled by the Defendant, or the Robert Trust.

112.    There is doubt as to the status and ownership of the Illinois Property and a bona fide, actual and present need for a determination of the issues from the Court.

**WHEREFORE,** the Plaintiffs respectfully request that the Court find in their favor on Count VII of the complaint and declare that the Illinois Property is property of the Robert Trust, as well as grant any other and further relief that the Court may deem just and proper.

DATED:  May 8, 2023

<div style="margin-left:40%">

*/s Michael D. Seese*

Michael D. Seese, Esq.

FBN 997323

**SEESE, P.A.**

101 N.E. 3rd Avenue

Suite 1500

Fort Lauderdale, FL 33301

Telephone No.: (954) 745-5897

E-mail: mseese@seeselaw.com

*Attorneys for the Plaintiffs*

</div>