

**ORDERED in the Southern District of Florida on July 30, 2025.**

Robert A. Mark, Judge
United States Bankruptcy Court

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

In re:                                          Case No. 22-16713-RAM
                                                Chapter 7
ELIZABETH K. RICHERT,

     Debtor.

_____/

KATHLEEN WHITE MURPHY and
THOMAS M. WHITE,

     Plaintiffs,

v.                                              Adv. Proc. No. 23-01110-RAM

ELIZABETH K. RICHERT,

     Defendant.

_____/

### <u>ORDER DENYING SUMMARY JUDGMENT MOTIONS, SETTING SCHEDULING CONFERENCE, AND SETTING FURTHER HEARING ON DISCOVERY MOTIONS</u>

In this adversary proceeding, the plaintiffs seek a judgment declaring that a home located in Illinois is property of a trust and not property of the debtor-defendant's

1

bankruptcy estate.  Both parties have filed summary judgment motions.  For the reasons detailed below, both motions are denied.

## Introduction

The Court conducted a hearing on October 21, 2024 on the Motion for Summary Judgment as to Count VII of Plaintiffs' Complaint and Incorporated Memorandum of Law [DE# 100] (the "Defendant's Summary Judgment Motion") filed by Elizabeth K. Richert and on Plaintiffs' Motion for Summary Judgment on Count VII of the Adversary Judgment [DE# 122] (the "Plaintiffs' Summary Judgment Motion" and together with the Defendant's Summary Judgment Motion, the "Summary Judgment Motions") filed by Kathleen White Murphy and Thomas M. White (together, the "Plaintiffs").

The Court has considered the record, including the Summary Judgment Motions and the following related filings:

A.    Plaintiffs' Opposition to Defendant's Motion for Summary Judgment as to Count VII of Plaintiffs' Complaint and Incorporated Memorandum of Law [DE# 104];

B.    Plaintiffs' Statement of Material Facts in Support of Opposition to Defendant's Motion for Summary Judgment as to Count VII of Plaintiffs' Complaint [DE# 105];

C.    Statement of Material Facts in Support of Defendant's Motion for Summary Judgment as to Count VII of Plaintiffs' Complaint [DE# 107];

D.    Declaration of Elizabeth K. Richert in Support of Motion for Summary Judgment [DE# 111];

E.    Plaintiffs' Statement of Material Facts (and Disputed Facts) in Support of Opposition to Defendant's Motion for Summary Judgment as to Count VII of Plaintiffs' Complaint [DE# 119];

F.    Plaintiffs' Supplemental Opposition to Defendant's Motion for Summary Judgment as to Count VII of Plaintiffs' Complaint [DE# 120];

G.    Plaintiffs' Statement of Material Facts in Support of Motion for Summary Judgment on Count VII of the Adversary Complaint [DE# 123];

H.    Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment [sic] as to Count VII [DE# 136];

I.    Defendant's Response in Opposition to Plaintiffs' Motion for Summary Judgment on Count VII of the Adversary Complaint and Incorporated Memorandum of Law [DE# 139];

J.    Statement of Material Facts in Opposition to Plaintiffs' Motion for Summary Judgment as to Count VII of the Adversary Complaint [DE# 140];

K.    Plaintiffs' Reply to Defendant's Response in Opposition to Plaintiffs' Motion for Summary Judgment on Count VII of Adversary Complaint and Incorporated Memorandum of Law [DE# 147]; and

L.    Plaintiffs' Statement of Supplemental Material Facts in Support of Motion for Summary Judgment on Count VII of the Adversary Complaint [DE# 148].

The Court has also considered orders entered and pleadings filed in that certain litigation that began in 2015 styled *Kathleen White Murphy and Thomas White, Co-Administrators of the Estate of Anna M. White, et al. v. Elizabeth Richert*, Case No. 15-civ-8185, that was pending in the U.S. District Court for the Northern District of Illinois (the "Illinois Court" and the "Illinois Case"), including the following:

A.    Memorandum Opinion and Order, dated August 28, 2018, entered in the Illinois Case, a copy of which is attached as Exhibit B to the Defendant's Summary Judgment Motion and located at 2018 U.S. Dist. LEXIS 146747 and 2018 WL 4101512 (the "Summary Judgment Opinion");

B.    Memorandum Opinion and Order, dated May 27, 2021, entered in the Illinois Case, a copy of which is attached as Exhibit A to the Complaint [DE# 1-1] and located at 2021 U.S. Dist. LEXIS 100959 and 2021 WL 2156448 (the "Trial Opinion");

C.    The Judgment in a Civil Case, dated May 27, 2021, entered in the Illinois Case in the amount of $246,152.76 in favor of the Plaintiffs and against the Defendant, a copy of which is attached as Exhibit B to the Complaint [DE# 1-2] (the "Judgment");

D.      December 29, 2022 Order awarding $95,845.89 in attorney's fees to the plaintiffs (the "Fee Order");

E.      Memorandum Opinion and Order, dated October 26, 2021, entered in the Illinois Case, a copy of which is attached as Exhibit A to the Defendant's Summary Judgment Motion and located at 2021 U.S. Dist. LEXIS 206162 and 2021 WL 4963605 (the "First Post-Trial Order"); and

F.      Order, dated April 21, 2022, entered in the Illinois Case, a copy of which is attached as Exhibit C to the Plaintiffs' Opposition to the Defendant's Summary Judgment Motion [DE# 104-3] (the "Second Post-Trial Order" and together with the First Post-Trial Order, the "Post-Trial Orders").

These opinions and orders will be described and discussed in more detail below.

Finally, the Court has also considered the arguments of counsel presented at the October 21, 2024 hearing and has reviewed applicable law.  For the reasons that follow, the Court is denying both the Defendant's Summary Judgment Motion and the Plaintiffs' Summary Judgment Motion.

## Factual Background

The undisputed facts relevant to the Summary Judgment Motions are derived primarily from the Trial Opinion and the Post-Trial Orders.  To the extent either the Plaintiffs or the Defendant argue that any of these facts are disputed, the Court finds that the facts determined by the Illinois Court in the Illinois Case are binding on the parties. The Trial Opinion and the Judgment were affirmed on appeal by the U.S. Court of Appeals for the Seventh Circuit on February 24, 2023.  On March 22, 2023, the Seventh Circuit denied the Defendant's petition for rehearing and rehearing *en banc*, and, on August 25, 2023, the U.S. Supreme Court denied the Defendant's petition for writ of certiorari.[1]

---

[1] Copies of these appellate orders are attached as Exhibits E, F, and G to the Plaintiffs' Opposition to the Defendant's Motion for Summary Judgment as to Count VII of Plaintiffs' Complaint and Incorporated Memorandum of Law [DE# 104].

The trust that is the subject of both the Illinois Case and this adversary proceeding is the Robert L. Richert Revocable Trust (the "Robert Trust") created by Robert L. Richert ("Robert") on June 12, 2008.

The original plaintiff in the Illinois Case, filed in July 2015, was Robert's sister, Anna White ("Anna").  Anna died after the Illinois Case was filed and the Plaintiffs,  as administrators of Anna's estate, were substituted in as the plaintiffs in the Illinois Case. Robert was the Plaintiffs' and the Defendant's uncle, so the Plaintiffs and the Defendant are first cousins.  As described by the Illinois Court, the 9-day trial of the breach of fiduciary duty claim in the Illinois Case arose out of a long-running and bitterly contested family dispute over the assets of the Robert Trust.

Robert died on November 9, 2009, and the Defendant became the successor trustee of the Robert Trust.  When Robert died, the Robert Trust assets consisted of Robert's home in Carefree, Arizona (the "Arizona Property") and $611,814.45 in an account with Fidelity Investments (the "Fidelity Account").

After Robert died, the property at issue in this proceeding (the "Buffalo Grove Property" or "Buffalo Grove") was acquired in a transaction described in the Trial Opinion as follows:

> On November 8, 2010, defendant and Anna White executed a Loan Agreement respecting the Buffalo Grove property.  Contrary to defendant's testimony, the agreement provided that the Buffalo Grove home would be titled in her name as trustee of the Robert Trust:
>
> > This is to certify that Elizabeth K. Richert will be loaning funds in the sum of $200,000 from the Robert L. Richert Trust, Elizabeth K. Richert, Trustee, to Anna M. White for the purpose of purchasing an investment property at 49 Willow Parkway, Buffalo Grove, IL 60089.  <u>The property will be titled in the name of the Trust and Elizabeth K. Richert, Trustee</u>, until

the loan is repaid in full.  At the time the loan is repaid, the title
to the property will be transferred to Anna M. White.

. . .

The parties stipulated that defendant loaned Anna $200,000.00 to
purchase the Buffalo Grove property.  However, no evidence was introduced
to show the accounts from which defendant obtained these funds.  Anna
and James closed on the Buffalo Grove home in November 2010.  <u>Both the
warranty deed and the HUD-1 form prepared during the sale show that the
Buffalo Grove home was transferred to defendant in her capacity as trustee
of the Robert Trust</u>.

Trial Opinion, pp. 15-16 (internal citations omitted) (emphasis added).

The Trial Opinion did not expressly find that funds from the Fidelity Account owned

by the Robert Trust were used to purchase the Buffalo Grove Property, but the Defendant

has essentially admitted that this is true.  In paragraph 106 of her Answer and Affirmative

Defenses to Complaint [DE# 53], the Defendant states that "Defendant admits that money

is fungible, that funds from the Robert Trust were under the control of the Defendant, and

that funds under the control of Defendant were used to acquire the Illinois Property[.]"

<u>The Illinois Case</u>

Anna's initial claim in the Illinois Case sought an order requiring the Defendant to

transfer title to the Buffalo Grove Property to Anna individually.  At that time, Buffalo Grove

was Anna's residence.  As described above, the Buffalo Grove Property was acquired in

2010, after Robert's death, and title was taken in the name of the Defendant, as trustee

of the Robert Trust.  Anna alleged that the Defendant committed professional malpractice,

that title to the Buffalo Grove Property should have been placed in Anna's name, and that

title should be transferred to her individually.  Unlike the claim in this adversary

proceeding, Anna was not seeking relief that the Buffalo Grove Property was titled in the

name of the Robert Trust.  That makes sense because title was still in the name of the Robert Trust when Anna commenced the Illinois Case.

The original complaint was amended in 2017 to add Count II, a claim for breach of fiduciary duty based upon an allegedly counterfeit version of the Robert Trust created by the Defendant, which the Defendant claimed entitled her to 47% of the assets of the Robert Trust not specifically provided for in the Robert Trust.  This is the portion of the Robert Trust that will be described in more detail later as the "Intestate Share."  The claim for professional malpractice asserted in the original complaint was included as Count I of the amended complaint.

On August 28, 2018, the Illinois Court issued the Summary Judgment Opinion, which among other things granted the Defendant's motion for summary judgment on the malpractice claim in Count I of the amended complaint.  As described in the Summary Judgment Opinion, the Illinois Court found that the malpractice claim was barred by the two-year statute of limitations applicable to malpractice claims.  2018 WL 4101512, at *6. The Illinois Court denied summary judgment on Count II, the breach of fiduciary duty claim, and that count was the subject of the trial in the Illinois Case.

Three points regarding summary judgment on the malpractice claim are important. First, the claim was a professional malpractice claim against the Defendant individually, not a claim against the Robert Trust.  Second, the claim asserted that Anna was the rightful owner of Buffalo Grove, not the Robert Trust.  Third, the Summary Judgment Opinion did not include any findings regarding title to the Buffalo Grove Property.  The ruling was based solely on the statute of limitations.  That said, dismissal of the malpractice claim with prejudice did preclude Anna (and later, the Plaintiffs, as

administrators of Anna's estate) from claiming title to the Buffalo Grove Property in their names.  The Plaintiffs concede this point.

However, summary judgment against the Plaintiffs on Count I did not preclude the Plaintiffs from seeking the relief requested in this adversary proceeding; namely, declaring that title to Buffalo Grove is rightfully held by the Robert Trust.  Title was in the name of the Robert Trust when the complaint was filed in the Illinois Case and when the Illinois Court entered summary judgment on Count I in favor of the Defendant.  It was much later, after entry of the Trial Opinion, that the Defendant executed a quitclaim deed transferring title to Buffalo Grove out of the Robert Trust.  The Court will discuss the quitclaim deed transaction in greater detail below.

Returning to the issues that were tried in the Illinois Case, there was no dispute that under all versions of the Robert Trust, Anna was entitled to 47% of the Robert Trust, 6% was allocated to named charities, and the Defendant was entitled to receive the Arizona Property.  These designated distributions will be referred to as the "Testate Shares" or the "Distributive Shares."

The Defendant disbursed all the money in the Fidelity Account between November 17, 2009 and January 15, 2010.  Trial Opinion at p. 6.  Two checks were written to Anna totaling $154,823.09 and the balance of the funds, $467,541.82, were disbursed in checks written to cash.  The Defendant testified at trial that she could not remember how the $467,541.82 had been spent.  *Id.*  As noted earlier, it is virtually certain that $200,000 from the Fidelity Account was used to purchase the Buffalo Grove Property.

In the Trial Opinion, the Illinois Court found that the Defendant breached her fiduciary duty to Anna by creating a counterfeit version of the Robert Trust and, based

upon the counterfeit document, the Defendant "failed to distribute to Anna White her one-third share of the forty-seven percent of the trust estate for which the authentic trust instrument does not designate a named beneficiary, and to which Anna White was therefore entitled under Arizona's intestacy laws."  Trial Opinion at p. 43.

For clarity, the 47% at issue in the breach of fiduciary duty claim tried by the Illinois Court was the 47% not designated in the authentic Robert Trust document, which the Court will refer to as the "Intestate Share."  The Judgment entered in the Illinois Case addressed only the Intestate Share.  As this Court will discuss below, the Plaintiffs did not seek a money judgment or other relief with respect to the Testate Share until after the Illinois Court entered the Judgment and the Plaintiffs filed a motion to alter or amend the Judgment.

Continuing, and as referenced earlier, the Trial Opinion and the Judgment awarded Plaintiffs $246,152.76 consisting of damages, punitive damages, and prejudgment interest.  The Trial Opinion reserved jurisdiction to award attorneys' fees and, pursuant to the Fee Order, the Illinois Court awarded the Plaintiffs a total of $95,845.89 in attorneys' fees.  The punitive damage award was supported by the Illinois Court's finding that the Defendant's "breach of fiduciary duty was reprehensible conduct and was committed with an evil mind[.]"  Trial Opinion at p. 85.

Importantly, the Trial Opinion did not address whether the Defendant was entitled to the Buffalo Grove Property.  Instead, the Illinois Court only found that the Buffalo Grove Property was titled in the name of the Defendant, as trustee of the Robert Trust.  The Trial Opinion also did not address any potential claim by the Plaintiffs for a distribution on their

47% Testate Share.  But there were additional findings and clarifications on these issues in the Post-Trial Orders.

As referenced earlier, on October 26, 2021, the Illinois Court issued the First Post-Trial Order.  Among other things, the First Post-Trial Order denied the Defendant's motion for a new trial, denied the Defendant's request for entry of a judgment awarding her title to the Buffalo Grove Property, and denied the Plaintiffs' request to amend the Judgment to grant the Plaintiffs a 62.51% interest in the Buffalo Grove Property or, in the alternative, to quiet title to the Buffalo Grove Property in the Plaintiffs' names in their capacity as co-administrators of Anna's estate.  In the First Post-Trial Order, the Illinois Court made it clear that it was not declaring the Defendant or the Plaintiffs to be the rightful owner of the Buffalo Grove Property and it was also not amending the Judgment to give the Plaintiffs a percentage interest in the Buffalo Grove Property as part of their Testate Share.  Recall that the trial on the breach of fiduciary duty claim only addressed the Plaintiffs' claims to a portion of the Intestate Share.

Some excerpts from the First Post-Trial Order are instructive.  In denying the Plaintiffs' post-trial request to amend the Judgment to give them a stake in the Buffalo Grove Property, the Illinois Court said:

> Because plaintiffs did not seek to prove at trial that they were entitled to a 62.51% stake in the Buffalo Grove home, and because plaintiffs did not request that relief before or during trial, plaintiffs may not try to obtain it now, for the first time, in a post-trial motion.

Defendant's Summary Judgment Motion [DE# 100] at p. 46.  The Illinois Court, citing back to the Trial Opinion, also explained that the claim to a 62.51% interest in the Buffalo Grove Property:

is not causally connected to the breach of fiduciary duty that plaintiffs proved in this case. Rather, defendant's breach of fiduciary duty—creating a fake version of the trust and using it to steal nearly half of the Robert Trust's assets— caused Anna White to lose only her one-third share of the forty-seven percent of the trust estate that the Robert Trust did not distribute to a named beneficiary.[2] To the extent plaintiffs sought to recover any portion of Anna White's forty-seven-percent share of the trust estate that defendant failed to distribute, that relief was associated with count one of their amended complaint, which the Court dismissed as time-barred. Because the only claim that might have entitled plaintiffs to recover the outstanding portion of Anna White's share as a named beneficiary of the Robert Trust was dismissed with prejudice, plaintiffs are not entitled to the requested relief.[3]

*Id.* at pp. 47-48*, citing the Trial Opinion (internal citations omitted) (internal footnotes added). The Illinois Court went on to summarize:

As these passages (and the remainder of the Court's Memorandum Opinion and Order) demonstrate, the principal issue at the bench trial was whether defendant had counterfeited a version of the Robert Trust in order to steal 47% of the trust estate to which she was not entitled. The trial was not more generally about determining what portion of the Robert Trust "belong[ed] to plaintiffs" or any of the other trust beneficiaries. And while plaintiffs had sought an accounting of the Robert Trust and an order transferring title to the Buffalo Grove home to themselves, the Court dismissed that claim on statute-of-limitations grounds long ago. Because the Court accordingly had no occasion to find—and in fact made no finding respecting—what portion of the Robert Trust "belong[ed] to plaintiffs," there is no basis in the Court's decision to award plaintiffs a 62.51% interest in the Buffalo Grove home.

*Id.* at p. 48 (emphasis added).

---

[2] This finding relates to the Intestate Share.

[3] This finding relates to the Testate or Distributive Share.

This First Post-Trial Order makes it clear that the Illinois Court did not determine the Plaintiffs' right to additional distributions based on their interest in the Distributive Share due to their mother, Anna.  The only final rulings were: (1) the Plaintiffs were not entitled to a judgment declaring them to be the owners of Buffalo Grove; and (2) the Judgment fully satisfied the Plaintiffs' claims against the Intestate Share.

About six months later, on April 21, 2022, the Illinois Court issued the Second Post-Trial Order.  That order denied the Defendant's request for injunctive relief in which she sought to bar the Plaintiffs from taking any action concerning the Buffalo Grove Property.  The Defendant's motion was premised on her argument that the Illinois Court had determined that she owned the Buffalo Grove Property.  The Illinois Court emphatically rejected the argument.  However, here's what the Illinois Court said:

> As for the merits, the motion has none.  First, the key predicate of defendant's motion—that the Court awarded defendant title to the Buffalo Grove home—is false.  As the Court explained when it denied defendant's post-trial motion to enforce judgment:
>
> > [T]o the extent that defendant contends she is entitled to affirmative relief respecting Count I of the amended complaint—in the form of damages, title to the Buffalo Grove property, or some other relief—her contention is based on a misunderstanding of the Court's prior ruling. In granting defendant's summary-judgment motion, *the Court decided only that the claim was untimely; it did not decide who should have title to the Buffalo Grove home*[.]

Second Post Trial Order [DE# 104-3] at p. 2 (quoting the First Post-Trial Order) (emphasis in original).

In sum, here is what we know from the Trial Opinion and Post-Trial Orders.  The Plaintiffs cannot claim title to Buffalo Grove in their name and the Illinois Court never ruled that the Defendant was entitled to hold title to Buffalo Grove in her name.  Moreover, it

does not appear that the Illinois Court knew that the Defendant had quitclaimed title to the Buffalo Grove Property out of the Robert Trust when it issued the Trial Opinion or the Post-Trial Orders, so the Illinois Court did not address the validity of that deed.  Again, the Court will discuss this quitclaim deed in more detail below.  We also know that the Plaintiffs were denied post-trial relief to amend the Judgment to include an award of a portion of the value of Buffalo Grove.  What remains to be decided is whether title to Buffalo Grove rightly should be in the Robert Trust and, if so, whether the Plaintiffs have any claim as 47% beneficiaries of the Testate Share of the Robert Trust to a portion of the value of Buffalo Grove.

<u>Other Post-Trial Events Relevant to Buffalo Grove</u>

In addition to the Trial Opinion, the Judgement and the Post-Trial Orders entered in the Illinois Case, the following post-trial events are relevant in this adversary proceeding.

As mentioned above, title to the Buffalo Grove Property was in the name of the Robert Trust when Anna commenced the Illinois Case and when the Illinois Court entered the Summary Judgment Opinion.  On June 25, 2020, prior to entry of the Trial Opinion and the Post-Trial Orders, the Defendant, as trustee of the Robert Trust, executed a quitclaim deed that transferred Buffalo Grove to "Geoffrey W. Colmes, Trustee of the trust dated April 17, 2020," a copy of which is attached as Exhibit A to the Defendant's Response in Opposition to Plaintiffs' Summary Judgment Motion (the "Quitclaim Deed").[4]

---

[4] The one-page Quitclaim Deed shows the November 2, 2021 recording date but does not state when the Quitclaim Deed was executed.  However, the Complaint in this adversary proceeding alleges that the Quitclaim Deed was executed on June 25, 2020 [DE# 1, ¶ 67].  This allegation was admitted, in part, in the Defendant's Answer and Affirmative Defenses to Complaint [DE# 53, ¶ 67], and the Defendant has not asserted a different date of execution of the Quitclaim Deed.

The trust referred to as the grantee in the Quitclaim Deed is the Elizabeth K. Richert Revocable Trust (the "E. Richert Trust"), which the Defendant has scheduled as a non-exempt asset in her chapter 7 case.  The Quitclaim Deed was not recorded until November 2, 2021, after entry of the Trial Opinion and the First Post-Trial Order.  Although the Quitclaim Deed was recorded before entry of the Second Post-Trial Order, the Second Post-Trial Order does not mention the Quitclaim Deed.  In sum, issues regarding the validity of the Defendant's execution and later recording of the Quitclaim Deed transferring the Buffalo Grove Property out of the Robert Trust and to the E. Richert Trust were not litigated in the Illinois Case and are not barred by the Summary Judgement Opinion, the Trial Opinion, or either of the Post-Trial Orders entered in the Illinois Case.

As noted, the Defendant does not claim that the E. Richert Trust is exempt property in her bankruptcy schedules.  Therefore, if the Quitclaim Deed is valid, then the Buffalo Grove Property is an asset of the Defendant's chapter 7 estate.  The chapter 7 estate is solvent.  If it remains solvent when the chapter 7 trustee makes her final distributions, then Buffalo Grove, if it is determined to be an estate asset and not an asset of the Robert Trust, will presumably be abandoned back to the E. Richert Trust.

One other event is important.  On June 1, 2021 and June 21, 2021, following entry of the Trial Opinion on May 27, 2021, the Defendant was removed as trustee of the Robert Trust, and a *Memorandum of Change of Trustee of the Robert L. Richert Revocable Trust, dated June 12, 2008* was recorded in Arizona and Illinois (collectively, the "Changes of Trustee").  Copies of the Changes of Trustee are attached as Exhibit O to the Plaintiffs' Summary Judgment Motion [DE# 122-15].  The Defendant argues that she was not properly removed as trustee of the Robert Trust and, as noted below, whether the

Plaintiffs had the authority to remove the Defendant as trustee of the Robert Trust remains an open issue in this proceeding.[5]

**Procedural Background**

On August 30, 2022, the Defendant filed a voluntary chapter 13 petition commencing the underlying bankruptcy case. On October 25, 2022, the Plaintiffs filed their proof of claim in the amount of $341,998.65. *See* Claim 5-1 in Case No. 22-16713 (the "Claim"). The Claim was comprised of the Judgement and the Fee Order entered in the Illinois Case. The case was converted to chapter 7 on February 2, 2023. *See* DE# 188 in Case No. 22-16713. Jacqueline Calderin was appointed as the chapter 7 trustee (the "Chapter 7 Trustee").

On May 8, 2023, the Plaintiffs filed this adversary proceeding. The Complaint [DE# 1] includes two counts objecting to the dischargeability of the Claim, four counts objecting to the Defendant's discharge, and a seventh count seeking declaratory relief that the Buffalo Grove Property is not property of this chapter 7 estate, but instead, remains property of the Robert Trust.

On July 11, 2023, the Defendant filed a Motion to Abate Counts I - VI of Complaint, Including Plaintiffs' Motion for Summary Judgment on Counts I and II [DE# 28] (the "Motion to Abate"). In the Motion to Abate, the Defendant agreed to cooperate in the sale of the Arizona Property,[6] which she alleged would generate sufficient proceeds to pay creditors in full, including the Plaintiffs. Because the Plaintiffs' Claim would be paid in full,

---

[5] The Second Post-Trial Order stated in a footnote that "[a]t some point after trial, it appears, plaintiffs removed defendant from her position as Trustee of the Robert Trust and replaced her with one of plaintiffs' attorneys." DE# 104, Ex. C, p.3 n.2. But the Illinois Court made no finding that the removal was proper or improper.

[6] The Defendant received the Arizona Property as her Testate or Distributive Share of the Robert Trust and the Arizona Property was scheduled as an asset of the bankruptcy estate.

there was no reason to proceed with litigation challenging the dischargeability of the Claim or challenging the Defendant's entitlement to a chapter 7 discharge. The Plaintiffs agreed to the relief and, on September 27, 2023, the Court granted the Motion to Abate. *See* DE# 45. As a result, the only count at issue in this adversary proceeding is the claim for declaratory relief as to ownership of the Buffalo Grove Property.

Except for the resolution of this adversary proceeding, the administration of the chapter 7 estate is largely concluded. The Court's August 8, 2024 Order Granting in Part and Denying in Part Trustee's Distribution Motion [DE# 603 in Case No. 22-16713] authorized the Chapter 7 Trustee to pay the Plaintiffs' Claim and payment has since been made.

## Discussion

The Plaintiffs seek a declaration that Buffalo Grove is an asset of the Robert Trust and that the Quitclaim Deed that the Defendant executed transferring title to the E. Richert Trust (*i.e.*, to herself) should be declared void. If the Plaintiffs obtain this relief, they seek to go no further in this Court. Instead, they will pursue in another court their claim to Anna White's 47% Distributive Share, acknowledging that this claim will be reduced by $154,823.09, the amount that the Defendant previously distributed to Anna White on account of her Distributive Share.

The Defendant's theory of the case is also simply stated. The Defendant argues, among other things, that the Illinois Court made it clear in the Post-Trial Orders that the Plaintiffs had no right to a further payment on account of Anna White's Distributive Share and, as such, the Plaintiffs' claim is barred by *res judicata*.

As discussed below, the Court finds that the Plaintiffs have standing to pursue their claims in this adversary proceeding and that these claims are not barred by *res judicata*. However, genuine issues of material fact preclude summary judgment.

Federal Rule of Civil Procedure 56(a), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Id*.

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id*. at 1577 (citing *Anderson*, 477 U.S. at 252).

A.    Plaintiffs' Claims are Not Barred by Res Judicata

The Defendant argues that that Plaintiffs' claims in this proceeding were fully adjudicated in the Illinois Case and, therefore, are barred by *res judicata*.    More

specifically, the Defendant argues that the Plaintiffs' claim for a declaration that the Buffalo Grove Property is an asset of the Robert Trust and their claim that they are entitled to a portion of the value of the Buffalo Grove Property on account of their Distributive Share of the Robert Trust are barred.  The Court disagrees.

The Defendant's Summary Judgement Motion describes the elements of *res judicata*, as summarized by the Eleventh Circuit:

> "The doctrine of res judicata or claim preclusion, **bars the parties to an action from litigating claims that were or could have been litigated in a prior action between the same parties**.'"  "If a case arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action, … the two cases are really the same claim or cause of action for purposes of res judicata." [*Solis v. Glob. Acceptance Credit Co., L.P.,* 601 Fed Appx. 767, 771 (11th Cir. 2015)] (internal quotations omitted). "'[R]es judicata applies not only to the exact legal theories advanced in the prior case, **but to all legal theories and claims arising out of the same nucleus of operative facts**.'" *Id*. at 771 (emphasis added) (quoting and citing *Wesch v. Folson*, 6 F.3d 1465, 1471 (11th Cir. 1993).

Defendant's Summary Judgment Motion [DE# 100] at p. 12 (emphasis in original).

Applying this standard to the facts here, the Court addresses first whether the claims were litigated in the Illinois Case and finds that neither title to Buffalo Grove nor the Plaintiffs' entitlement to recover additional money on account of their 47% Distributive Share were adjudicated in the Illinois Case.  In the First Post-Trial Order, described and quoted above, the Illinois Court made it clear that it was not declaring the Defendant or the Plaintiffs to be the rightful owner of the Buffalo Grove Property.  The Illinois Court rejected the Defendant's argument that the Summary Judgment Opinion meant that she, and not the Plaintiffs, was the owner of Buffalo Grove: "In granting defendant's summary-judgment motion, *the Court decided only that the claim was untimely; it did not decide*

*who should have title to the Buffalo Grove home*[.]"  Second Post-Trial Order [DE# 104-3] at p. 3 (quoting the First Pre-Trial Order) (emphasis in original).

As to adjudication of the Plaintiffs' claim for a further distribution on their 47% Distributive Share, the Defendant is correct that this claim was rejected when it was asserted post-trial in the Illinois Court.  However, the Illinois Court rejected the argument because it was not raised in either the Count 1 malpractice claim or in the Count 2 breach of fiduciary duty claim.  But, as the Illinois Court explained in the First Post-Trial Order:

> [T]he principal issue at the bench trial was whether defendant had counterfeited a version of the Robert Trust in order to steal 47% of the trust estate to which she was not entitled. <u>The trial was not more generally about determining what portion of the Robert Trust "belong[ed] to plaintiffs" or any of the other trust beneficiaries</u>.  And while plaintiffs had sought an accounting of the Robert Trust and an order transferring title to the Buffalo Grove home to themselves, the Court dismissed that claim on statute-of-limitations grounds long ago.  Because the Court accordingly had no occasion to find—<u>and in fact made no finding respecting—what portion of the Robert Trust "belong[ed] to plaintiffs</u>," there is no basis in the Court's decision to award plaintiffs a 62.51% interest in the Buffalo Grove home.

First Pretrial Order, DE# 100, at p.48 (emphasis added).

The second issue is whether the Plaintiffs' claim that the Buffalo Grove Property is an asset of the Robert Trust <u>could have been litigated</u> in the Illinois Case and, therefore, is now barred.  As counsel for the Plaintiffs aptly described at oral argument on October 21, 2024, in analyzing whether the claim could have been litigated, the Court should be asking why it would have been litigated.  Posed that way, the answer is clear.  There was no reason for the Plaintiffs to assert a claim that Buffalo Grove was an asset of the Robert Trust because during the trial in the Illinois Case and before recordation of the Quitclaim Deed, that was not an issue.  The Trial Opinion found that title was in the name of the

Defendant, as trustee of the Robert Trust and, as described above, the Illinois Court noted but never addressed the validity of the Quitclaim Deed.  Stated another way, using the standards for *res judicata,* the now-asserted claim in this adversary to declare that Buffalo Grove is an asset of the Robert Trust does not arise from the "same nucleus of operative facts" as those at issue in the Illinois Case.  Rather, it arises from the Quitclaim Deed which transferred title out of the Robert Trust and into the E. Richert Trust—a deed that was executed after the trial in the Illinois Case, not recorded until after entry of the First Post-Trial Order, and not the subject of any findings in the Illinois Case.

In sum, the Court finds that the issues raised in Count VII of the Complaint are not barred by *res judicata*.  The Plaintiffs are not barred from seeking a declaration that Buffalo Grove is an asset of the Robert Trust.  And, as a predicate to that claim for relief, the Plaintiffs are not barred from asking this Court to determine that the Defendant was properly removed as trustee of the Robert Trust and that the Quitclaim Deed, recorded after her removal, did not legally transfer title from the Robert Trust to the E. Richert Trust.[7]

B.    Genuine Disputes of Material Fact Remain to Be Decided

To review, there are no genuine issues of material fact on some issues that were argued in the Summary Judgement Motions.  First, the Plaintiffs' Judgment in the Illinois Case fully satisfied their claim to a portion (1/3 of 47%) of the Intestate Share of the Robert

---

[7] At the October 21, 2024 hearing on the Summary Judgement Motions, the Defendant argued that this Court does not have jurisdiction to determine whether she was properly removed as trustee of the Robert Trust.  The Court rejects that argument.  The Defendant scheduled the E. Richert Trust as an asset and, therefore, the Court has jurisdiction to determine whether her trust does or does not own the Buffalo Grove Property.  To make that determination the Court will likely need to determine whether she was lawfully removed as trustee of the Robert Trust before she recorded the Quitclaim Deed.

Trust.[8]  Second, at best, the Plaintiffs' claim for additional distributions on the Testate or Distributive Share is limited to 47% of the $611,814.45 in the Fidelity Account when Robert died minus the $154,823.09 previously received by Anna White.[9]  Importantly, even if the Plaintiffs prevail in this adversary proceeding and Buffalo Grove is declared to be an asset of the Robert Trust, the amount of the Plaintiffs' claim for additional distributions on Anna's 47% Distributive Share and whether Buffalo Grove would be sold to satisfy the claim must be decided by another court.  This Court is simply finding that the Plaintiffs' right to seek a further distribution on account of their Distributive Share is not barred by *res judicata* and that this Court has jurisdiction to decide whether Buffalo Grove is an asset of the Robert Trust.

To determine whether Buffalo Grove is an asset of the Robert Trust, the Court must decide whether the Quitclaim Deed transferring title from the Robert Trust to the E. Richert Trust is valid and enforceable.  To answer that question, the Court must resolve two sub-issues.  First, was the Defendant properly removed as trustee of the Robert Trust in June 2021 before the Quitclaim Deed was recorded?  Second, even if the Defendant was not properly removed as trustee of the Robert Trust, did she have the right to transfer Buffalo Grove to the E. Richert Trust?

---

[8] At the October 21, 2024 hearing on the Summary Judgment Motions, the Plaintiffs' counsel confirmed that "[w]e're not seeking to recover on the intestate share,  because . . . that was consumed within the judgment." Partial transcript of October 21, 2024 hearing [DE# 149] (the "Hearing Transcript"), at p.10, lines 14-16.

[9] At the October 21, 2024 hearing, in describing the Plaintiffs' claim on the Testate share, the Plaintiffs' counsel stated that their claim amount would be "whatever 47 percent from the sale or disposition of the Buffalo Grove property results in, that is credited against the testate share, less the 154,000 that has already been paid." Hearing Transcript, p.10, lines 11-14.  The Defendant argued that Anna may have received more than $154,823.09 in distributions on her Testate Share.  If that is a factual issue, it is an issue to be resolved in another court if the Plaintiffs prevail in this adversary proceeding.

Resolution of these issues will determine whether the Plaintiffs are entitled to the declaratory relief they seek in this proceeding; namely, a declaration that Buffalo Grove remains an asset of the Robert Trust. If so, the Plaintiffs may pursue their claim for an additional distribution on their remaining Distributive Share of the Robert Trust in a non-bankruptcy court of competent jurisdiction.

Based upon the foregoing, the Court **ORDERS** as follows:

1.      The Defendant's Summary Judgment Motion [DE# 100] is denied.

2.      The Plaintiffs' Summary Judgment Motion [DE# 122] is denied.

3.      The Court will conduct a scheduling conference on September 25, 2025 at 11:30 a.m.  The scheduling conference will be conducted by video conference using the services of Zoom Video Communications, Inc.  To register for the video conference, click on the following link or manually enter the following link in a browser:

https://www.zoomgov.com/meeting/register/vJIsduqrrTIsGwLENmZWZhscEHry3et9jXQ

4.      The parties must meet at least 14 days prior to the scheduling conference, and, at the scheduling conference, the parties must announce the proposed dates and deadlines to be included in a pretrial scheduling order, as required by paragraphs 5 and 6 of the Order Setting Scheduling Conference and Establishing Procedures and Deadlines [DE# 3].

5.      On September 25, 2025 at 11:30 a.m., the Court will also conduct a further hearing on the Plaintiffs' Motion to Compel Depositions, Production of Documents, and Answers to Interrogatories [DE# 112] and on the Joint Motion for Protective Order [DE# 141].  The Court is setting this further hearing in accordance with its October 15, 2024 Order Reserving Ruling on Discovery Motions.

###

Copies to:

Michael D. Seese, Esq.
Brett D. Lieberman, Esq.